UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00707-MOC-DCK

| | |
|---|---|
| **LATASHA PATTERSON,** ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | MEMORANDUM OF DECISION |
| ) | and |
| Vs. ) | ORDER |
| ) | |
| **FLAGSTAR BANK, FSB,** ) | |
| ) | |
| Defendant(s). ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#14). Such motion was filed August 16, 2013, and, as noticed by the Clerk of Court, plaintiff's response was due to filed not later than September 3, 2013. Review of the pleadings on September 9, 2013, reveals that no response or request for extension of that deadline has been filed by counsel for plaintiff.

**I.     Applicable Standard**

The court has carefully considered the Motion for Summary Judgment, the supporting Memorandum of Law, the Appendix of Exhibits, and the Declarations of defendant's representatives. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

1

**(c) Procedures.**
> (**1**) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a

factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## II.     Procedural Default

Here, defendant has made an initial showing that there are no genuine issues of material fact for trial. Having made such showing, the burden shifted to plaintiff to persuade the court that there are issues of fact remaining for trial. In particular, plaintiff has not objected and shown that any fact proffered by defendant is unsupported by admissible evidence, Fed.R.Civ.P. 56(c),

3

has not cited the court to material showing that a dispute exists, Fed.R.Civ.P. 56(d), and has presented affidavits or declarations in opposition to those submitted by defendant. Fed.R.Civ.P. 56(d). Thus, defendant is entitled to the judgment it seeks as a matter of law.

## III. Substantive Review

In an abundance of caution, the court has also reviewed the substance of defendant's Motion for Summary Judgment. Defendant contends that all five of plaintiff's claims must be dismissed as she does not have admissible evidence of a breach of contract, negligence, unjust enrichment, or unfair and deceptive trade practice.

### A. Undisputed Factual Basis

Defendant made a mortgage loan to plaintiff in the amount of $195,856.00 on August 25, 2009, which refinanced an older mortgage loan. The new loan provided plaintiff with a lower interest rate. In return, plaintiff executed a Note and a Deed of Trust, which gave defendant a security interest in property she owned at 8603 Heartleaf Road, Charlotte, North Carolina.

Plaintiff alleges that she lost her job in October 2011 and could not continue to make her mortgage payments. She alleged that she then requested on three occasions that defendant modify her loan terms, but that defendant refused to do so. At defendant's request, *Rogers Townsend & Thomas, PC*, acting as substitute trustee under the Deed of Trust, filed a special proceeding in Mecklenburg County Superior Court on February 29, 2012, to foreclose on the property. On May 21, 2012, the Clerk of Superior Court entered an order in the foreclosure proceeding finding, among other things, that "Flagstar Bank, FSB is the holder of the Note and Deed of Trust sought to be foreclosed and the Note evidences a valid debt which is secured by the . . . Deed of Trust," the Note was "now in default," and that "[t]he Deed of Trust gives the noteholder the right to foreclose under a power of sale and is enforceable according to its terms."

4

The Clerk held that Rogers Townsend was "authorized to proceed with the foreclosure of the . . . Deed of Trust." Patterson did not appeal from this order or seek to enjoin the foreclosure sale.

The foreclosure sale was held on June 11, 2012. Defendant bid in $230,060.17 at the sale, which was the full amount of the debt owed at the time, and then reassigned its bid to the United States Department of Housing and Urban Development ("HUD"). *Rogers Townsend* deeded the property to HUD, and a Final Report and Account of Foreclosure Sale was filed on June 26. On June 28, 2012, *Rogers Townsend* sent a letter to Patterson giving her 10 days to vacate the Property. When she did not vacate the property, the Clerk issued an Order on July 11, 2012, directing the sheriff to put HUD in possession of the Property.

Plaintiff then retained the *Porter Law Firm* (counsel herein), which attempted to assist plaintiff in an effort to reinstate the Loan. On July 17, 2012, *Rogers Townsend* e-mailed the firm that "Flagstar will not allow Ms. Patterson to reinstate and the eviction process will not be postponed. Plaintiff and her counsel began a campaign to "pressure" Rogers Townsend into providing them with a reinstatement quote.

> [W]e're extending the pressure . . . onto Rogers Townsend to, you know, give us . . . this good through date [and] payoff quote . . . . [W]e were putting a lot of pressure on them . . . [by] calling. I called. Mr. Porter called and—you know, we were all just trying to extend the pressure . . . .

Deposition of Marcus Jenkins at 89-91.

Eventually, plaintiff was evicted from the property . On July 30, 2012, seven days after eviction, *Rogers Townsend* sent a reinstatement quote to plaintiff's counsel. The quote listed amounts that would need to be paid to reinstate the Loan and stated, "[t]his reinstatement quote is good through August 10, 2012." Jenkins Depo., p. 71, exhibit 8. Defendant's representative, Everett D. Dumars, testified that because the Loan could not be reinstated after the foreclosure sale, the letter should not have been sent by *Rogers Townsend*. Two days after such

5

reinstatement was extended by *Rogers Townsend*, defendant revoked the offer and a *Rogers Townsend* representative sent an e-mail to plaintiff's counsel followed by a phone call advising that the quote or offer never should have been given.

Plaintiff claims by the time the offer was revoked, she had accumulated some $17,000.00 and was therefore able to pay the reinstatement amount. A paralegal for plaintiff's counsel testified that counsel herein for plaintiff had gone to the bank to wire the reinstatement amount to *Rogers Townsend* on August 1 when the call came in, and that he told counsel not to wire the funds. Jenkins Depo., p. 92 . No funds were ever wired to *Rogers Townsend*.

### B. Breach of Contract

In order to state a claim for breach of contract, the following essential elements must be alleged and, on summary judgment, the plaintiff bears the burden of coming forward with admissible evidence that satisfy its burden as to each element:

(1) a legal obligation of defendant to the plaintiff;

(2) a violation or breach of that right or duty; and

(3) a consequential injury or damage to the defendant.

See generally Investment Properties v. Norburn, 281 N.C. 191 (1972). Under North Carolina law,

> [w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court[,] and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

Piedmont Bank & Trust Co. v. Stevenson, 79 N.C.App. 236, 240 (internal citations omitted), aff'd per curiam, 317 N.C. 330 (1986). Thus, '[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face

it purports to mean." Hartford Accident & Indemnity. Co. v. Hood, 226 N.C. 706, 710 (1946) (internal citations omitted).

### 1. Revocation of a Unilateral Contract

Here, while it is apparent that *Rogers Townsend's* "quote" was not authorized by defendant, it was an "offer" nonetheless. Plaintiff alleges in her Complaint that "made a specific offer of reinstatement to Plaintiff, which was open for acceptance by Plaintiff until August 10, 2010," and that "the offer of reinstatement made by Defendant constitutes a contract, which was accepted by Plaintiff, both verbally and in writing." Complaint at ¶¶ 30-31. Defendant has shown that the offer was not subject to acceptance by anything less than performance, as the offer provided that the loan would not be reinstated unless and until plaintiff paid the loan deficiency. The offer letter provided that

> If your payment is less than the total reinstatement amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process.

July 30 Letter at 2. There is no language in the offer letter that seeks acceptance by any other means than by performance, and it is undisputed that the offer was revoked before that condition was met.

"A unilateral contract is formed when one party makes a promise and expressly or impliedly invites the other party to perform some act as a condition for making the promise binding on the promisor." CIM Ins. Corp. v. Cascade Auto Glass, Inc., 190 N.C. App. 808, 811 (1979). An offeror may revoke his offer before it is accepted. Normile v. Miller, 313 N.C. 98, 108-109 (1985). "The revocation of an offer terminates it, and the offeree ha[s] no power to revive the offer by any subsequent attempts to accept." Id. at 109. Thus, it is undisputed that

7

defendant revoked the offer before plaintiff accepted the offer through payment of the reinstatement amount.

### 2. Revocation of the Option

Inasmuch as the letter provided that "the reinstatement quote is good through August 10, 2012" and the revocation came before that date, the court has construed the letter in a light most favorable to plaintiff and considered it to be an "option," a subspecies of a unilateral contract. Id. at 105. Inasmuch as the option does not in any way bind defendant to act, the option remains an "offer" and does not evolve into a contract until acceptance thorough performance. Winders v. Kenan, 161 N.C. 62 (1913).

Here, the court has given particular attention to the revocation occurring before August 10, 2012, the date on which defendant's agent stated the reinstatement amount would be "good." Plaintiff has not, however, alleged and presented any evidence that provided any valuable consideration for the promise to keep the offer open until August 10. That counsel for plaintiff was on his way to the bank or even at the bank to wire the funds to *Rogers Townsend* is of no moment, as the obligation of the plaintiff to pay the quoted price in case she elects to exercise the option is not sufficient consideration for the distinct promise to keep the option available. McLamb v. T.P., Inc., 173 N.C. App. 586, 592 (2005). An offer to hold open the option for a period of time is a distinct promise and it was plaintiff's obligation to come forward with evidence that would that she exchanged a valuable consideration for that promise, distinct from the performance sought by offer of reinstatement. Id. Where as here an option is not supported by consideration, it may be withdraw at any time before acceptance. Winders, 161 N.C. at 632. Thus, plaintiff's contract claim fails as a matter of law and will be dismissed.

### 3. Estoppel

Plaintiff has also alleged in her Complaint a breach of contract based on detrimental reliance on the offer. Promissory estoppel is a

> promise which the promisor should reasonably expert to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co., 86 N.C. App. 540 (1987) (citation and corresponding quotation marks omitted). Promissory estoppel is not, however, a substitute for consideration. Id. at 543.

As plaintiff has presented no evidence touching on the nature of her detrimental reliance, the court has considered the allegation of her Complaint that she "specifically relied upon the specific, professional representations of Defendant, to the direct detriment of Plaintiff's best interests and resulting in the loss of her home." Complaint at ¶ 33. As the undisputed evidence indicates, plaintiff had already lost her home to foreclose and been evicted prior to the promise being made by defendant. Such conclusory allegation is insufficient to show any forbearance on the plaintiff's part. Thus, plaintiff is unable to rely on the doctrine of promissory estoppel.

**C.    Negligence**

The essential elements of a cause of action for negligence are duty, breach of duty, proximate cause, and damages. Camalier v. Jeffries, 340 N.C. 699, 706 (1995). In order to recover, however, "all damages must flow directly and naturally from the wrong, and... they must be certain both in their nature and in respect to the cause from which they proceed." People's Center, Inc. v. Anderson, 32 N.C.App. 746, 748 (1977) (citation omitted). "[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is

made or from some other source." Id., at 748-49 (citation omitted). Plaintiff has not pointed to any duty that defendant has breached. While plaintiff complains that defendant never modified her loan despite her requests, plaintiff has pointed to no duty of a lender to modify a loan based on changed circumstances for the borrower.

Plaintiff also appears to contend in the context of her negligence claim that defendant violated the obligation of good faith and fair dealing. In the context of lender negligence, North Carolina courts do not recognize a claim of negligence arising from duties beyond those expressly provided for in the loan agreement. Camp v. Leonard, 133 N.C. App. 554, 560 (1999); Wagner v. Branch Banking & Trust Co., 179 N.C. App. 436, 2006 WL 2528495, at *2 (Sept. 5, 2006). The covenant of good faith and fair dealing -- which is implied in every contract -- only arises where there *is* a contract between the parties. Bicycle Transit v. Bell, 314 N.C. 219, 228 (1985). As discussed above, there was no contract to breach and no cognizable claim for breach of contract; thus, there can be no claim for breach of an implied covenant in a non-existent contract. USA Trouser, S.A. de CV v. Int'l Legwear Group, Inc., No. 1:11-cv-00244, 2012 U.S. Dist. LEXIS 177456 at **21-22 (W.D.N.C. Dec. 14, 2012).

Finally, the court has considered plaintiff's claim of negligence to be a claim of negligent misrepresentation. In alleging and supporting a claim for negligent misrepresentation, the essential elements are that plaintiff justifiably relied to her detriment on information prepared without reasonable care by a person who owed the relying party a duty of care. Hudson-Cole Dev. Corp. v. Beemer, 132 N.C.App. 341, 346 (1999). Assuming that *Rogers Townsend* acted without reasonable care in extending the

offer, plaintiff has not presented any evidence that she detrimentally relied on that information, as discussed above.

The court will dismiss plaintiff's claim of negligence.

### D. Unjust Enrichment Claim

Plaintiff also contends that defendant was unjustly enriched by foreclosing on her home. She seeks to recover the increase in value of her home since foreclosure or any amount of depreciation. For plaintiff to state a cause of action for unjust enrichment,

> the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous.

Austin Hatcher Realty, Inc. v. Arnold, 2008 WL 2246675, 5 (N.C.App. 2008). The law in North Carolina appears to be clear that:

> An implied contract is not based on an actual agreement, and *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a *quasi* contract or a contract implied in law in order to prevent an unjust enrichment.

Whitfield v. Gilchrist, 348 N.C. 39, 497 S.E.2d 412, 415 (1998); accord Pritchett & Burch, PLLC v. Boyd, 169 N.C.App. 118, 124 (2005). Plaintiff's claim fails as a matter of law inasmuch as her claim is based on the foreclosure of the written agreement between the parties, to wit, the Deed of Trust as discussed above. Further, plaintiff has presented no evidence that defendant was in any manner enriched, justly or unjustly, by the foreclosure of the Deed of Trust. It is undisputed that defendant bid in the full amount of the debt at the foreclosure sale and that it was not outbid, resulting in no distributable surplus.

Finally, plaintiff has made no showing that would support imposition of a constructive trust as she has presented no evidence that defendant acquired title to her property other than through legal process, which went uncontested in state court. Finally, a constructive trust cannot be imposed on defendant as it is not and has never been the "holder of legal title" to the property. As discussed above, upon acceptance of its bid, defendant assigned its bid to HUD, which is not a party to this action. Carcano v. JBSS, LLC, 200 N.C. App. 162, 170 (2009).

Plaintiff's claim for unjust enrichment will be dismissed.

### E. Unfair and Deceptive Trade Practices Act Claim

A state-law claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977) In response to the decision of the North Carolina Supreme Court in Edmisten, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated . . . ." Id.

The UDTPA is, without doubt, a scheme regulating conduct between buyers and

sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). To state a cause of action under the UDTPA, a plaintiff must allege the following:

(1) conduct constituting an "unfair or deceptive act or practice;"

(2) conduct "in or affecting commerce," and

(3) that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996).

Under Chapter 75-1-1 of the North Carolina General Statutes, a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980). A cause of action for unfair and deceptive trade practices under Section 75-1-1 can be a distinct cause of action from breach of contract claim. Branch Banking and Trust Co. v. Thompson, 107 N.C.App. 53, 62 (1992). To do so, however, plaintiff must show "substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." Id. It is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Broussard v. Meineke Discount Muffler Shops, 155 F.3d 331, 347 (4th Cir. 1998)(citation omitted).

As discussed above, defendant was well within its rights under established North Carolina law to revoke its offer before acceptance and was under no duty to modify its loan with plaintff. Thus, the only way a contract claim could give rise to a UDTPA claim is if the plaintiff alleged that defendant never intended to fulfill its contractual

obligations, which she does not allege. <u>Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch</u>, 80 F.3d 895, 903 (4th Cir. 1996) ("[A] broken promise is unfair or deceptive only if the promisor had no intent to perform when he made the promise."). Here, there is no evidence that defendant's agent *Rogers Townsend* was aware that it could not reinstate the loan when it sent plaintiff the reinstatement letter. While it clear that defendant nixed the proposed reinstatement soon after the letter was sent, the pivotal moment is when the obligation was undertaken. <u>Jones v. Capitol Broad. Co., Inc.</u>, 128 N.C.App. 271, 276 (1998). Thus, plaintiff has stated no actionable harm under the UDTPA or supported such with admissible evidence, and such claim will be dismissed.

### F.   "Claim" for Punitive Damages

Plaintiff has also attempted to assert a freestanding claim for punitive damages. As a matter of state law, "punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

<u>Hawkins v. Hawkins</u>, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

<u>Combs & Associates, Inc. v. Kennedy</u>, 147 N.C.App. 362, 374 (2001) (citation omitted).

14

Further, it appears that

> [p]unitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Phillips v. Restaurant Management of Carolina, L.P., 146 N.C.App. 203, 215- 16 (2001) (citation omitted). In North Carolina, the aggravating factors that will justify imposition of punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen.Stat. § 1D-15(a).

As punitive damages are a remedy and not a cause of action, such claim will be dismissed for failure to state a cause of action.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#14) is GRANTED, and this action is **DISMISSED** in its entirety with prejudice. The Clerk of Court shall enter judgment consistent with this Memorandum of Decision and Order

Signed: September 16, 2013

Max O. Cogburn Jr.
United States District Judge